**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 1, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EFREN DUARTE-HURTADO,

      Defendant-Appellant.

No. 08-2021
(D.Ct. No. 2:07-CR-00433-JB-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Efren Duarte-Hurtado pled guilty to one count of illegal re-entry of a deported or removed alien in violation of 8 U.S.C. § 1326(a) and (b) and was

_____

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sentenced to thirty-six months imprisonment. On appeal, Mr. Duarte-Hurtado contests the procedural reasonableness of his below-Guidelines-range sentence, claiming the district court impermissibly considered his rejection of a fast-track sentence as a sentencing factor under 18 U.S.C. § 3553(a), which resulted in its failure to give him a lesser sentence than imposed in granting his request for a variance. He also contends the district court gave this impermissible factor more weight than the § 3553(a) factors, resulting in a lesser variance than had it properly considered those factors. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Mr. Duarte-Hurtado's sentence.

## I. Background

On January 7, 2007, during a traffic stop conducted by United States border patrol agents, Mr. Duarte-Hurtado was found hiding with others in a vehicle and, on questioning, admitted he was a citizen of Mexico illegally present in this country. After his arrest, Mr. Duarte-Hurtado submitted a statement admitting he entered the country, without permission, to earn money for his son's and granddaughter's medical care. Pursuant to a fast-track plea agreement, Mr. Duarte-Hurtado pled guilty to one count of illegal re-entry of a deported or removed alien in violation of 8 U.S.C. § 1326(a) and (b). As a part of that agreement, the government agreed to recommend: (1) a downward departure for an offense level no higher than nineteen; and (2) a sentence at the low end of the

United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range.  In exchange, Mr. Duarte-Hurtado agreed not to argue for a departure or variance beyond that contained in the fast-track agreement and to waive his appeal rights.

After Mr. Duarte-Hurtado pled guilty, a probation officer began preparing a presentence report calculating his sentence under the applicable Guidelines. During approximately the same time, a psychological evaluation was conducted in which it was determined Mr. Duarte-Hurtado was not formally mentally retarded but suffered mild mental retardation in his capacity to concentrate, attend, and process.  Despite this limitation, the psychologist conducting the evaluation stated he was "able to understand the nature of the proceedings against him or to assist in his own defense." R., Vol. 1, Doc. 31 at 7.  Thereafter, Mr. Duarte-Hurtado filed a motion to withdraw his guilty plea pursuant to the fast-track program in order to permit him to plead guilty without such a plea agreement, explaining the parties had "agreed that each will waive certain provisions of the plea agreement, namely the benefits of the fast-track and waiver of appeal, in exchange for the ability to argue for a sentencing variance or departure." R., Vol. 1, Doc. 25 at 1-2.  The district court granted the unopposed motion to withdraw Mr. Duarte-Hurtado's fast-track guilty plea and allowed him to plead guilty without the

benefit of a plea agreement.[1]

In calculating Mr. Duarte-Hurtado's sentence, the probation officer set his base offense level at eight pursuant to U.S.S.G. § 2L1.2(a) and increased it sixteen levels pursuant to § 2L1.2(b)(1)(A) because he had previously been deported following a conviction for a felony drug trafficking offense for which he received a sentence exceeding thirteen months. The probation officer also recommended a three-level offense reduction for acceptance of responsibility, for a total offense level of twenty-one, which, together with his criminal history category of II, resulted in a recommended Guidelines sentencing range of forty-one to fifty-one months imprisonment. Finally, the probation officer assessed Mr. Duarte-Hurtado's family circumstances and each of the sentencing factors in 18 U.S.C. § 3553(a) in an effort to provide the district court assistance, but did not make a specific recommendation with regard to those factors.

Prior to sentencing, Mr. Duarte-Hurtado filed a sentencing memorandum, requesting: (1) a downward departure based on issues of his diminished capacity, cultural assimilation, and family ties and responsibilities; and (2) a variance

---

[1] At the sentencing hearing held on August 22, 2007, Mr. Duarte-Hurtado pled guilty to the charges in the indictment without benefit of a plea agreement, after which the district court conducted a Rule 11 examination and accepted his guilty plea.

pursuant to 18 U.S.C. § 3553(a) on similar grounds. The government opposed both, requesting imposition of a sentence at the low end of the forty-one- to fifty-one-month sentencing range, or, alternatively, if a departure or variance was granted, requesting the sentence be no lower than thirty-three months. At his sentencing hearing, Mr. Duarte-Hurtado renewed his arguments in support of a downward departure and variance. The district court denied the request for a downward departure with regard to mental capacity, cultural assimilation, and family circumstances.

Specifically, the district court found Mr. Duarte-Hurtado did not suffer from a significantly reduced mental capacity which contributed to the commission of his illegal re-entry because he appeared to understand his re-entry was illegal when he attempted to hide from the border patrol agents and admitted he had re-entered the United States illegally to earn money. It also noted the psychologist found him capable of understanding the proceedings and assisting with his own defense, thereby implicating his capacity to understand his actions. The district court also stated it had carefully reviewed Mr. Duarte-Hurtado's family circumstances, including his financial support of his family and his son's and granddaughter's illnesses and treatment, and found insufficient information to conclude his situation was extraordinary or unique. Finally, with regard to assimilation, the district court noted Mr. Duarte-Hurtado had spent half of his life

in the United States, but had also spent one-third of that time in prison, making it difficult to determine he had assimilated to the life of a law-abiding citizen. Based on these findings, the district court concluded the issues of his family circumstances, assimilation, and diminished capacity were not so unusual as to distinguish him from similarly situated aliens and, when viewed together with his serious criminal record, did not warrant a downward departure from the Guidelines range of forty-one to fifty-one months imprisonment.

Following this portion of the sentencing hearing, Mr. Duarte-Hurtado's counsel argued for a variance, discussing the same issues, as well as the need to avoid disparity with similarly situated individuals, including those who took advantage of the fast-track program. In response to questions on the latter issue, Mr. Duarte-Hurtado's counsel reasoned the disparity between Mr. Duarte-Hurtado and other defendants who received lesser sentences under the fast-track program could be considered under 18 U.S.C. § 3553(a)(4)(A), but not under § 3553(a)(6).[2]

---

[2] Specifically, § 3553(a)(4)(A) states, in part, that the district court shall consider "the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...." 18 U.S.C. § 3553(a)(4)(A). Section 3553(a)(6) requires the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

After adopting the unopposed factual findings in the presentence report and stating it had carefully considered all the § 3553(a) factors and the applicable Guidelines, the district court exhaustively discussed the requested variance and circumstances raised in support of it, as well as the § 3553(a) sentencing factors. In discussing the § 3553(a) factors, the district court noted illegal re-entry of a prior felon, as well as drug trafficking, were serious offenses, and Mr. Duarte-Hurtado's diminished capacity and family circumstances did not necessarily warrant a variance, given they did not distinguish him from other similarly situated individuals, but would help to "reduce" those factors weighing against a variance. It also recognized the need to avoid unwarranted sentencing disparities between defendants committing similar crimes and discussed whether Mr. Duarte-Hurtado, who did not enter into a fast-track agreement or forfeit certain rights, including the right to appeal, should be treated the same as those who entered into fast-track agreements and forfeited their rights. It concluded Congress made a distinction so that a sentence at the same level as those in the fast-track program would be inappropriate, but that "on an individual level" a sentence of forty-one months, at the low end of the forty-one- to fifty-one-month sentencing range, would not reflect an appropriate sentence for Mr. Duarte-Hurtado compared with those defendants with similar records and crimes. It then determined a below-Guidelines sentence of thirty-six months was appropriate based on its consideration of all the sentencing factors.

Following the sentencing hearing, the district court issued a comprehensive opinion and order in which it again thoroughly discussed Mr. Duarte-Hurtado's request for a downward departure and variance and the thirty-six-month sentence it was imposing. It reiterated, in a comprehensive manner, why it felt no departure or variance was warranted for diminished capacity, cultural assimilation, or family ties, but why it felt a variance was necessary to avoid a sentencing disparity between Mr. Duarte-Hurtado and other defendants who committed similar crimes and have similar records. In so doing, it explicitly discussed the relevant law for downward departures and variances and the § 3553(a) factors, including, in part, the fact his family circumstances and diminished capacity did not significantly distinguish him from other similarly situated individuals, but did "weaken the need for a guideline sentence," and the need to avoid unwarranted sentencing disparities between Mr. Duarte-Hurtado and other defendants who committed similar crimes. With respect to the latter, the district court stated:

> The Court understands that it needs to make sure to recognize the distinction that Congress has put in place for Fast-Track programs by recognizing the value of the program both to the defendant and to the United States. In taking those values into consideration, the Court believes that a sentence at the same level as an individual who accepted the Fast-Track Program is inappropriate because it would fail to recognize any distinction between those who do and do not accept that agreement. The Court is also concerned, however, that a sentence of 41 months, at the low end of the guideline range, would not reflect the sentences of people who have committed similar crimes and have similar records to [Mr.] Duarte-Hurtado. The Court

believes, therefore, that some variance is appropriate. Taking into consideration this factor, as well as the other variance factors the Court has discussed herein, the Court believes that a sentence of 36 months balances these factors best.

R., Vol. 1, Doc. 31 at 30.

## II. Discussion

Mr. Duarte-Hurtado now appeals his thirty-six-month sentence on grounds it is procedurally unreasonable because the court "erroneously relied on an improper factor in analyzing [his] variance request under 18 U.S.C. § 3553(a)." Apt. Br. at 8. Specifically, he claims the district court relied on the fact he rejected the fast-track plea offer as a factor in determining an appropriate sentence which he argues "is an impermissible factor" under § 3553(a), resulting in "procedural error" and a higher sentence than had it not considered such a factor. Even if consideration of the fast-track issue is permissible, Mr. Duarte-Hurtado argues the district court placed too much reliance on it and failed to adequately consider his mental impairment and compelling family reasons.

We review a sentence for reasonableness, giving deference to the district court under an abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 802-03, 805 (10th Cir. 2008). "Our appellate review for reasonableness includes both a procedural component, encompassing the method by which a

sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *Id.* at 803. In determining whether the district court properly calculated a sentence, we review its legal conclusions de novo and its factual findings for clear error. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*). "In *Gall*, the Supreme Court identified 'failing to consider the § 3553(a) factors'[3] and 'failing to adequately explain the chosen sentence' as forms of procedural error." *Smart*, 518 F.3d at 803 (quoting *Gall v. United States*, ___U.S. ___, 128 S. Ct. 586, 597 (2007)). We have also said a district court commits a form of procedural error when it bases a sentence on a factor not within the categories set forth in § 3553(a). *See id.* This is because "§ 3553(a) mandates consideration of its enumerated factors, and implicitly forbids consideration of factors outside its scope." *Id.* at 803-04.

One of the enumerated factors the district court is mandated to consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). "[W]hether any such disparity justifies a sentencing variance in a given case raises a separate question ... of substantive reasonableness ...." *Smart*,

---

[3] The § 3553(a) factors include not only "the nature of the offense" but the history and "characteristics of the defendant, as well as the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment ...." *Kristl*, 437 F.3d at 1053; *see also* 18 U.S.C. § 3553(a).

518 F.3d at 805. This is because "[a] challenge to the sufficiency of the § 3553(a) justifications relied on by the district court implicates the substantive reasonableness of the resulting sentence." *Id.* at 804. In our review of the substantive reasonableness of a sentence, "[w]e may not examine the weight a district court assigns to the various § 3553(a) factors, and its ultimate assessment of the balance between them," but must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* at 808 (quotation marks and citations omitted).

With these principles in mind, we soundly reject Mr. Duarte-Hurtado's argument his sentence is procedurally unreasonable because the district court failed to adequately consider his mental capacity and family circumstances and impermissibly considered a factor outside those included in § 3553(a). First, the district court discussed in thorough, if not exhaustive, detail the facts and circumstances of Mr. Duarte-Hurtado's mental capacity and family circumstances, as well as the § 3553(a) factors, leaving us to readily conclude that it did not fail to adequately consider either Mr. Duarte-Hurtado's arguments or the § 3553(a) factors, or otherwise fail to explain the chosen sentence.

Next, it is evident the district court carefully weighed each of the circumstances presented, together with the § 3553(a) factors, in determining

whether to grant a variance, and that one of the sentencing factors it believed tipped the balance in favor of granting the variance was § 3553(a)(6).  In applying this factor, the district court explained that a sentence of forty-one months, at the low end of the Guidelines range, would not reflect the same length of sentence received by people who committed similar crimes and have similar records to Mr. Duarte-Hurtado.  It then concluded that in "[t]aking into consideration this factor, as well as the other variance factors ... discussed," it believed "a sentence of 36 months balances these factors best."  R., Vol. 1, Doc. 31 at 30.  Thus, it is clear no procedural error occurred.  Further, under *Smart*, we may not examine the weight assigned to any one factor in determining the substantive reasonableness of Mr. Duarte-Hurtado's sentence, and, instead, give due deference to the district court's decision the § 3553(a) factors, on a whole, justified the extent of the variance given.  *See* 518 F.3d at 808.

Finally, we find no error in the fact the district court also addressed the issue of fast-track sentencing in its disparity discussion and stated a sentence at the same level as an individual who accepted the fast-track program would be inappropriate because it would fail to recognize any distinction between those who do and do not accept such agreements.  It is clear the district court was merely addressing an issue raised at sentencing when Mr. Duarte-Hurtado asked to receive the same sentence as those in the fast-track program and argued it

would be appropriate to do so under 18 U.S.C. § 3553(a)(4)(A), but not under § 3553(a)(6). The fact Mr. Duarte-Hurtado now argues the district court's consideration of this issue was impermissible under any subsection of § 3553(a) is rather disingenuous, considering his contrary argument before the district court. Moreover, consideration of the fact Mr. Duarte-Hurtado did not participate in the fast-track program does not constitute consideration of an impermissible factor under the circumstances presented. We have said a district court can impose sentences on persons convicted of unlawful re-entry without adjusting for disparities caused by fast-track sentencing. *See United States v. Martinez-Trujillo*, 468 F.3d 1266, 1268-69 (10th Cir. 2006) (relying on *United States v. Morales-Chaires*, 430 F.3d 1124, 1131 (10th Cir. 2005)). In *Martinez-Trujillo*, we concluded that because Congress permitted district courts to participate in fast-track programs, but did not revise the terms of § 3553(a)(6) regarding sentencing disparities, Congress recognized sentencing disparities for some defendants would result from such programs, but that such sentences would not violate § 3553(a)(6). *See* 468 F.3d at 1268-69 (relying on the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. 108-21, 117 Stat. 650 (codified in scattered sections of 18 and 42 U.S.C.)). The district court merely recognized this distinction when it refused to give Mr. Duarte-Hurtado the same sentence as those who participate in the fast-track program.

For these reasons, we discern no application of an impermissible factor in conjunction with § 3553(a) or any other procedural error in the calculation of Mr. Duarte-Hurtado's sentence. As to the substantive reasonableness of the district court's determination to grant a five-month downward variance, rather than a larger variance, as requested, nothing in the record or the circumstances presented suggests it abused its discretion in granting the variance and imposing a sentence of thirty-six months duration.

## III.  Conclusion

For these reasons, we **AFFIRM** Mr. Duarte-Hurtado's sentence.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge