**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 8, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

SANTOS ORELLANA-ALEMAN,
also known as Jose Antonio Guzman-
Monge,

        Defendant - Appellant.

No. 08-3294

(D. Kansas)

(D.C. No.6:08-CR-10119-WEB-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **MURPHY**, **BALDOCK**, and **HARTZ**, Circuit Judges.

---

Santos Orellana-Aleman pleaded guilty to one count of illegal reentry by a

previously removed alien. 8 U.S.C. § 1326(a). The district court varied upward

from the one-to-seven-month advisory Guidelines range, imposing upon Orellana-

Aleman a term of imprisonment of twenty-four months. Orellana-Aleman

appeals, contending the sentence imposed by the district court is both

procedurally and substantively unreasonable. Exercising jurisdiction pursuant to

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, this court **affirms** the district court's sentence.

Following Orellana-Aleman's guilty plea, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). *See generally* Fed. R. Crim. P. 32(d). The PSR calculated an offense level of six[1] and a criminal history category of II,[2] resulting in an advisory guideline range of one to seven months. U.S.S.G. ch. 5, pt. A. The PSR set forth the following factor potentially warranting an upward variance[3]:

> [Orellana-Aleman] has a history of illegal entry and re-entry to the United States. As noted in the [PSR], [Orellana-Aleman] has a total of 12 prior illegal entries. [Orellana-Aleman] was prosecuted on his second illegal entry in October 1996 and sentenced to 30 days custody. Since 1996[,] [Orellana-Aleman] has illegally entered the United States 10 times and been subjected to no prosecution. Therefore, to promote respect for the law and afford adequate deterrence to criminal conduct, a sentencing variance above the advisory guideline may be warranted.

---

[1]U.S.S.G. § 2L1.2(a) (setting base offense level at eight for violations of § 1326(a)); *id.* § 3E1.1(a) (providing for two level decrease to offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense").

[2]Orellana-Aleman's three criminal history points placed him in criminal history category II. U.S.S.G. ch. 5, pt. A.

[3]A variance occurs when a court deviates from the sentencing range set out in the Guidelines upon consideration of the factors set out in 18 U.S.C. § 3553(a). *United States v. Atencio*, 476 F.3d 1099, 1101 n.1 (10th Cir. 2007), *overruled in part on other grounds by Irizarry v. United States*, 128 S. Ct. 2198, 2201 n.1 (2008). In contrast, a departure occurs "when a court reaches a sentence above or below the recommended Guidelines range through application of Chapters Four or Five of the Sentencing Guidelines." *Id.*

Neither Orellana-Aleman nor the government filed objections to the PSR. Specifically, Orellana-Aleman did not file any written objections to the factual history of his numerous entries into the United States over the previous decade.

Orellana-Aleman did, however, file a sentencing memorandum, requesting a sentence within the advisory Guidelines range. In that memorandum, Orellana-Aleman recognized he had "returned to the United States and been deported" "many times." He nevertheless argued the Guidelines range appropriately reflected the nature and circumstances of the offense and his history and characteristics. He asserted he was a simple person with minimal understanding of the criminal justice system, his criminal history involved minor crimes (i.e., two separate thefts of bicycles), and he worked hard at menial jobs for minimum wage. He further argued that because the Guidelines did not contemplate, in arriving at an advisory sentencing range, unprosecuted prior entries into the United States, varying upward on such a basis would generate unwarranted sentencing disparities.

After the issuance of the PSR, the district court issued an order notifying the parties it was contemplating an upward variance. At the sentencing hearing, the district announced a tentative sentence of twenty-four months imprisonment, the statutory maximum, based upon (1) a consideration of the 18 U.S.C. § 3553(a) factors; (2) Orellana-Aleman's history of illegal entries into the United States, including twelve illegal reentries and eleven removals without prosecution;

-3-

(3) respect for the seriousness of the offense and for the law; and (4) adequate deterrence. In response, Orellana-Aleman asserted such a sentence would be both procedurally and substantively unreasonable. He further argued, however, that he had not been afforded sufficient time to develop his objections. To allow Orellana-Aleman to fully develop his objections, the district court continued the sentencing hearing for two weeks.

Prior to the resumption of the sentencing hearing, Orellana-Aleman filed an objection to the district court's proposed upward variance. He argued it was procedurally improper for the district court to rely on his history of unprosecuted illegal reentries for three reasons: (1) the unique structure of § 2L1.2, which ties a defendant's offense level directly to his prior convictions, renders prior conduct not resulting in a conviction legally irrelevant; (2) the executive branch's decision not to prosecute him for his previous entries demonstrated those acts were not serious; and (3) punishing him more harshly on the basis of his previous entries, given that the government had declined to prosecute those acts, would improperly invade the province of the executive branch. Orellana-Aleman further argued a twenty-four-month sentence, a 340% increase from the high end of the applicable advisory Guidelines range, was not substantively reasonable.

When the sentencing hearing resumed, the district court recognized and summarized Orellana-Aleman's arguments in favor of a within-Guidelines sentence and asked the parties whether they had any further arguments. The

government urged the district court to impose a sentence of twenty-four months' imprisonment based on Orellana-Aleman's "complete disdain for the laws of this country." The government noted that on many occasions, Orellana-Aleman reentered the United States within a month of a previous removal. Reiterating and amplifying the arguments set out in both his sentencing memorandum and his objection to upward variance, Orellana-Aleman requested that the district court impose a sentence within the advisory Guidelines range.

The district court rejected Orellana-Aleman's request for a sentence within the advisory Guidelines range and imposed a sentence of twenty-four months' imprisonment. In explaining why a substantial upward variance was appropriate, the district court first recounted Orellana-Aleman's extensive contacts with immigration officials.[4] In particular, the district court noted Orellana-Aleman had

---

[4]The district court summarized those contacts as follows:

The defendant was convicted of illegal entry in 1996. He was convicted under the name of [Jose Antonio-Guzman]. He was arrested one other time in 1996 for illegal entry. In that case he did not tell the law enforcement his correct name . . . [or country of origin].

Twice in 2000 he was found in the United States. Both times he gave . . . law enforcement an incorrect name. Both times he told officials he was a national of Mexico. The defendant is not a national of Mexico. He's a national of El Salvador. He returned to Mexico on both occasions.

Three times in 2002 the defendant was found in the United States. He gave two different names. He also gave a different date of birth the third time he was arrested. He told officials he was a national of Mexico and was allowed to voluntarily return to Mexico.

In 2003 the defendant was arrested under the name of Jose

(continued...)

been arrested for illegally entering the United States numerous times, resulting in one conviction under § 1326(a) and eleven removals from the United States. The district court further noted Orellana-Aleman frequently misled law enforcement officers as to his true name, date of birth, and country of origin. With this background in mind, the district court concluded the factors set out in 18 U.S.C. § 3553(a) called for an upward variance from the range set out in the advisory Sentencing Guidelines:

> As we know[,] the Court shall impose a sentence that is sufficient but not greater than necessary to comply with the purposes of 3553(a).
> The defendant's been removed from this country on numerous occasions. He's lied to . . . law enforcement regarding his correct legal name, correct legal birth date and the country in which he is a national.

---

[4](...continued)
Guzman for illegal entry. He said he was a national of Mexico. He was allowed to voluntarily return to Mexico.

In 2004 the defendant was arrested twice for illegal entry. He [gave] different names both times he was arrested. He said he was a national of Mexico. He was allowed to voluntarily return to Mexico on the first occasion. He was deported to Mexico on the second occasion.

In 2005 the defendant was charged twice for illegal entry after deportation. The defendant gave an incorrect name both times. He also gave different dates of birth on each occasion. He was deported to El Salvador on both occasions.

In 2006 the defendant was arrested one time under [a] false name for illegal entry [after] deportation. He said he was a national of Mexico. He was deported to El Salvador.

In the case at hand the defendant was arrested under the name of Jose Antonio Guzman-Monge. It was not until the time of the plea he notified the Court that his correct name was Santos Orellana-Aleman.

The defendant's argument that he is a simple, uneducated man and does not understand the criminal justice system is not supported by the facts. He understands the system enough to lie to the law enforcement authorities about his name, date of birth and even his country to which he belonged. This proves he knew he would be [removed], knows that his identification was incorrect, and by giving a different identification and allowed to return to Mexico where it would be easier to reenter this country.

The defendant's argument that a [variance] is impermissible simply because there's no commentary under [§ 2L1.2 regarding departures] is incorrect. Courts should consider the factors under [18 U.S.C. § 3553(a)] in every sentencing. . . . [A]s a matter of fact[,] the Court's never seen a case in which there were 11 reentries due to the lying by the defendant of his birth date, his country and his name.

After considering the nature and circumstances of this offense and the history of the defendant, the kinds of sentences in the sentencing range under the guidelines . . . , it's my determination that a sentence of 24 months [will foster] respect [for] the law and afford an adequate deterrence from further criminal behavior.

Orellana-Aleman appeals the district court's sentence, contending the sentence is both procedurally and substantively unreasonable. As to the question of procedural reasonableness, Orellana-Aleman raises the following general assertions: (1) it was improper for the district court to rely on Orellana-Aleman's history of illegal entries because the Sentencing Commission eliminated departures on that ground when it overhauled U.S.S.G. § 2L1.2, the Guideline applicable to unlawfully entering or remaining in the United States; and (2) the district court's use of Orellana-Aleman's unprosecuted entries into the United States invaded the prerogative of the executive branch. As to the question of substantive reasonableness, Orellana-Aleman asserts the twenty-four-month

sentence imposed by the district court is simply too severe given the nature of his crime.

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews the reasonableness of a sentence imposed by the district court under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). This is true whether the district court's chosen sentence is "inside, just outside, or significantly outside the Guidelines range." *Id.* "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quotations omitted).

Reasonableness review encompasses both a procedural and a substantive component. *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008). The procedural component addresses whether the district court miscalculated or failed to calculate the Guidelines range, treated the Guidelines as mandatory, failed to consider the factors set out in 18 U.S.C. § 3553(a), relied on clearly erroneous facts, or failed to adequately explain the sentence. *Gall*, 552 U.S. at 51. The substantive component addresses "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a)]." *Verdin-Garcia*, 516 F.3d at 895 (quotations omitted). When a district court varies from the range set out in the Guidelines, this court "consider[s] the extent of the deviation" as part of its analysis of substantive

reasonableness. *Gall*, 552 U.S. at 51. Nevertheless, we must give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.* That is, this court "may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). Although sentences within a correctly calculated Guidelines range may be presumed reasonable on appeal, sentences outside the Guidelines range may not be presumed unreasonable. *Id.*

Having set out the background and governing legal standards, Orellana-Aleman's sentencing appeal can be resolved in short order. Orellana-Aleman asserts the district court committed procedural sentencing error when it relied on Orellana-Aleman's history of unprosecuted illegal entries into the United States to support an upward variance from the advisory Guidelines range. Orellana-Aleman asserts the district court's reliance on those unprosecuted entries into the United States is procedurally improper because such reliance: (1) is inconsistent with the sentencing scheme set out in the Guidelines; and (2) improperly invades the province of the executive branch. These contentions are entirely without merit.

Orellana-Aleman asserts it was improper for the district court to consider his history of unprosecuted entries into the United States because § 2L1.2 narrowly focuses on prior convictions in arriving at an appropriate offense level.

Orellana-Aleman further notes that when the Sentencing Commission substantially revised § 2L1.2 in 2001 to focus on specified types of pre-deportation convictions, it specifically rewrote the commentary to § 2L1.2 to delete any references to departures. *See* U.S.S.G. amend. 632 (setting out revised commentary and reasons for rewriting § 2L1.2). Thus, according to Orellana-Aleman, a prior history of unprosecuted entries into the United States is simply irrelevant for purposes of arriving at a Guidelines sentence. Finally, Orellana-Aleman asserts that in imposing a sentence significantly above the range set out in the Guidelines by reference to matters not contemplated by the Guideline, the district court simply abandoned any consideration of § 2L1.2.[5]

Orellana-Aleman's argument is inconsistent with this court's precedents. It is absolutely clear that in arriving at an appropriate sentence in this particular case, the district court correctly calculated and considered Orellana-Aleman's advisory Guidelines range. The mere fact the district court chose to vary from that range does not mean it ignored the Guidelines. *United States v. Smart*, 518

---

[5]For the first time on appeal, Orellana-Aleman asserts the district court failed to adequately explain the method it employed in settling on a sentence significantly above the range set out in the Guidelines. Because Orellana-Aleman did not raise this procedural-reasonableness challenge before the district court, it is forfeited. *Gall v. United States*, 552 U.S. 38, 51 (2007) (holding that a claim the district court failed to "adequately explain the sentence" is a challenge to the procedural reasonableness of the sentence); *United States v. Romero*, 491 F.3d 1173, 1177-78 (10th Cir. 2007) (this court reviews forfeited challenges to the procedural reasonableness of a sentence only for plain error). Because Orellana-Aleman fails to address whether this forfeited "error" is plain, we do not consider the issue further.

F.3d 800, 809 (10th Cir. 2008) ("We may not conclude that simply by diverging from the Guidelines, a district court has disregarded the policy considerations which led the Commission to create a particular Guideline."). Instead, the district court correctly recognized that in arriving at an appropriate sentence under § 3553(a), it is free to consider a broad range of "individual characteristics, like age, employment, and criminal history . . . , even when disfavored under the Guidelines or already accounted for in another part of the calculation." *United States v. Jarvi*, 537 F.3d 1256, 1263 (10th Cir. 2008). Appellate courts have uniformly held that a history of illegally entering or reentering the United States is a relevant sentencing characteristic district courts can consider in arriving at an appropriate sentence under § 3553(a). *See, e.g.*, *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009) (holding defendant's history of illegally reentering the United States "provide[d] a reasonable basis for imposing a harsher sentence"); *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) (same); *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (same); *see also United States v. Valtierra-Rojas*, 468 F.3d 1235, 1241 (10th Cir. 2006) (noting in dicta that a demonstrated propensity, through multiple illegal reentries, to return to the United States would justify greater punishment).

Orellana-Aleman attempts to distinguish his case by asserting the record reveals he was merely "arrested" on immigration charges, not that he was actually guilty of being in the United States illegally. The record does not bear out this

assertion. The PSR indicates that in addition to a single conviction for illegally entering the United States, Orellana-Aleman either voluntarily departed or was deported from the United States on eleven instances. As to the four entries resulting in deportation, the civil adjudicative process attendant to deportation determinations conclusively establishes Orellana-Aleman was in the United States illegally. *United States v. Monjaraz-Reyes*, 285 F. App'x 146, 147 (5th Cir. 2008) (unpublished). Under the particular facts of this case, it was likewise appropriate for the district court to consider the seven post-1996 entries into the United States identified in the PSR that resulted in a voluntary departure on the part of Orellana-Aleman. The use of a signature modus operandi by Orellana-Aleman in his interactions with immigration authorities (i.e., false names, birth dates, and nationality), together with his history of deportations, reliably indicates that during each of Orellana-Aleman's arrests he was in the United States illegally. *Lopez-Velasquez*, 526 F.3d at 807 ("[Defendant's] eleven prior arrests by immigration officials do not 'stand alone'—here they are corroborated by more than half a dozen deportations. These arrests are sufficiently 'supported by evidence' to constitute reliable grounds for a variance in this case."). Thus, the uncontested facts set out in the PSR demonstrate much more than that Orellana-Aleman was "arrested" for illegally reentering the United States; they demonstrate Orellana-Aleman is, in fact, an unrepentant violator of the immigration laws of the United States.

-12-

Orellana-Aleman asserts the district court's reliance on his prior unprosecuted entries into the United States invades the province of the Executive Branch. He asserts that because the Attorney General declined to prosecute him for the past entries, and because the decision whether to prosecute is within the sole discretion of the Executive Branch, the district court's consideration of that conduct usurped the role of the prosecutor. A necessary predicate of this allegation of error, however, is that consideration of those unprosecuted entries amounts to the district court punishing him for that conduct. The Supreme Court has made clear, however, that "consideration of information about the defendant's character and conduct at sentencing does not result in 'punishment' for any offense other than the one of which the defendant was convicted." *Witte v. United States*, 515 U.S. 389, 401 (1995) (approving consideration of uncharged criminal conduct in arriving at appropriate offense level under the Guidelines). The district court did not punish Orellana-Aleman for his unprosecuted entries into the United States, but instead merely considered them as part of Orellana-Aleman's history and characteristics for purposes of arriving at a proper sentence for the instant crime under § 3553(a). Thus, the district court did not invade the province of the Executive Branch and did not commit procedural error in considering Orellana-Aleman's prior entries in arriving at a sentence in this case.[6]

---

[6]Orellana-Aleman likewise asserts that the district court's consideration of his unprosecuted entries violates the Equal Protection Clause of the Fifth

(continued...)

Finally, Orellana-Aleman asserts that the twenty-four month sentence imposed by the district court is substantively unreasonable. In that regard, he notes the sentence is more than three times greater than the top of the advisory Guidelines range. He argues such a lengthy sentence is longer than necessary to comply with the purposes of § 3553(a)(2), especially given his limited criminal history.

The district court's chosen sentence is not arbitrary, capricious, or manifestly unreasonable. *Munoz-Nava*, 524 F.3d at 1146. Orellana-Aleman's history of illegally reentering the United States is extensive. More importantly, Orellana-Aleman's use of aliases and false birth dates, especially when accompanied by falsification of his country of origin, demonstrates a sophisticated understanding of this country's immigration laws and a dogged determination to disregard those laws and continue returning to the United States in violation of law. The district court's determination that only a particularly lengthy sentence had the potential to dissuade Orellana-Aleman from further attempts to enter the country illegally is strongly supported by the record. This weighty justification is more than sufficient to justify the substantial upward

[6](...continued)
Amendment. As was true of his separation-of-powers claim, this claim is dependent on Orellana-Aleman's erroneous assertion that consideration of his unprosecuted conduct amounts to punishing him for that conduct. Accordingly, for the same reason set out above in rejecting Orellana-Aleman's separation-of-powers claim, this claim also fails.

variance adopted by the district court in this case. *Gall*, 552 U.S. at 50 ("We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.").

For those reasons set out above, the sentence imposed by the United States District Court for the District of Kansas is hereby **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge