**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 2, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff-Appellee, | |
| v. | No. 12-1434 |
| | (D.Ct. No. 1:11-CR-00188-JKL-1) |
| LESLIE RENEE HEE, | (D. Colo.) |
| Defendant-Appellant. | |

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Appellant Leslie Renee Hee pled guilty to one count of conspiracy to

---

[*] This order and judgment is not binding precedent except under the
doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

distribute and possess with intent to distribute the controlled substances of cocaine, oxycodone, fentanyl and methylenedioxymethamphetamine (commonly known as Ecstasy), in violation of 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1) and (b)(1)(C); and 21 U.S.C. § 846, and was sentenced to 180 months imprisonment. On appeal, Ms. Hee contests both the procedural and substantive reasonableness of her sentence. We exercise jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291 and affirm Ms. Hee's sentence.

## I. Background

On May 4, 2011, a thirty-four-count indictment issued against Ms. Hee and members of her drug trafficking organization. Ms. Hee pled guilty to one count of conspiracy to distribute and possess with intent to distribute controlled substances in exchange for dismissal of at least twenty-eight other drug-related counts against her. In her plea agreement, Ms. Hee stipulated to the following material facts and also agreed the court could consider relevant conduct and any additional pertinent facts in computing her sentence.

In early 2008, agents with the Denver Police Vice and Drug Control Bureau, together with agents of the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives, began an investigation of Ms. Hee's husband, Michael Hee. During their investigation, agents learned of the Hees' association with the

overdose death of Jeremiha Bennett, a thirty-one-year-old man found dead in their residence on April 25, 2008. Medical personnel called to the home observed several prescription pill bottles in the living room on a table near the body, including OxyContin (a brand name for oxycodone) and Xanax (a brand name for alprazolam), prescribed to Mr. Bennett by Dr. N. Hoffman. Agents later discovered Ms. Hee referred Mr. Bennett to Dr. Hoffman for the purpose of obtaining prescription drugs to further Ms. Hee's drug trafficking organization and that from January to April 2008, Mr. Bennett obtained multiple prescriptions for OxyContin and alprazolam from Dr. Hoffman.

Days after Mr. Bennett's death, agents followed Ms. Hee and another female, Ali Wilfley, to a parking lot and observed them leave their vehicle and enter a tanning and nail salon. Ms. Wilfley later exited the salon and entered the vehicle where agents observed what appeared to be a narcotics transaction between her and a male, hereafter referred to as S.B. After S.B. drove away in another vehicle, authorities conducted a traffic stop during which they discovered OxyContin in his possession. After his arrest, S.B. advised agents: (1) he called Ms. Hee earlier that day to obtain OxyContin and she told him to meet Ms. Wilfley in the parking lot; (2) he paid $100 and received twenty pills from her but still owed $700 for them; (3) Ms. Hee usually gave him a couple of weeks to pay; (4) he had known Ms. Hee since January 2008 and bought approximately ten

OxyContin pills from her each week; (5) Ms. Hee recruited individuals into her drug trafficking ring and directed them to make appointments with Dr. Hoffman and other area doctors she determined were "easy marks" for the purpose of obtaining prescription drugs; (6) once they obtained the prescriptions, Ms. Hee paid them for filling the prescriptions and gave them some of the pills for their use or for sale to users and lower-level drug traffickers; (7) he believed Ms. Hee sold OxyContin to at least eight to ten people and also sold fentanyl and Percocet (a prescription drug containing oxycodone); and (8) while Ms. Hee's prescription drug trafficking organization sold pharmaceuticals, as well as cocaine and methamphetamine, she preferred selling and distributing OxyContin.

On May 6, 2008, S.B. introduced an undercover agent to Ms. Hee for the purpose of purchasing Schedule II prescription drugs from her and other members of her organization; on that day, the agent purchased 2.6799 grams of oxycodone from her. From May to October 2008, and then again on November 10, 2010, undercover agents purchased large quantities of various illegal and prescription drugs from Ms. Hee directly or, occasionally, through members of her organization at her direction.[1] Agents also obtained a ledger containing entries relating to Ms. Hee's organization's sale of certain amounts of narcotics.

[1] While the amounts and types of drugs are listed in the plea agreement, for judicial economy, we decline to list the dates of every transaction or the exact amounts and specific types of drugs for the purpose of disposing of this appeal.

During an October 2008 transaction, an agent overheard Ms. Hee's conversation with another woman concerning the death of Katina Phillips, a member of Ms. Hee's drug trafficking organization. Authorities later confirmed Ms. Phillips died on October 16, 2008, after drowning in a bathtub, and had cocaine and Ecstasy, and possibly OxyContin and alprazolam, in her system. During an interview with authorities, the individual who discovered Ms. Phillips's body, hereinafter referred to as B.D., admitted Ms. Phillips obtained, from a pocket in his pants, certain drugs, including cocaine, Ecstasy, OxyContin, fentanyl, and Xanax, and that Ms. Hee's organization was the source of all the prescription narcotics in his possession. Authorities also discovered, through information provided by Ms. Phillips's sister, that Ms. Phillips participated in Ms. Hee's drug trafficking organization, struggled with prescription drug addiction, and met Ms. Hee at a drug addiction meeting.

On November 17, 2008, through records from the Colorado State Pharmacy Board, agents verified Ms. Hee's drug trafficking organization included fourteen individuals, of which twelve maintained multiple prescriptions for various narcotics, such as fentanyl and oxycodone, and that most of these prescriptions came from Dr. Hoffman. In April 2009, agents interviewed one of Ms. Hee's co-conspirators, who gave intricate details regarding the operation of the drug trafficking organization, including how Ms. Hee recruited and trained members to

obtain and sell prescription drugs, kept them addicted to prescription drugs, and/or threatened to cause them harm.

In pleading guilty, Ms. Hee stipulated, in part: (1) her base offense level was 38 because the offense to which she pled guilty resulted in Ms. Phillips's and Mr. Bennett's deaths; (2) she organized and led the conspiracy involving five or more participants which resulted in those two deaths; and (3) she was not eligible for a safety valve reduction due to those deaths. Following Ms. Hee's guilty plea, a probation officer prepared a presentence report, calculating her sentence under the applicable 2011 United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). In explaining her offense conduct, the probation officer reiterated the stipulated facts contained in Ms. Hee's plea agreement, as previously outlined, and attached to the presentence report voluminous supporting documents. In calculating her sentence, the probation officer set Ms. Hee's base offense level at 38, pursuant to U.S.S.G. § 2D1.1(a)(2), based on her conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(C) and the relevant conduct related to that offense which resulted in the deaths of Ms. Phillips and Mr. Bennett. The probation officer then increased the base offense level four levels under § 3B1.1(a), because Ms. Hee was the organizer and leader of a drug trafficking organization involving five or more participants, and reduced it three levels for acceptance of responsibility, for a total offense level of 39. A total offense level

of 39, together with Ms. Hee's criminal history category of I, resulted in a recommended Guidelines range of 262 to 327 months imprisonment. However, because her Guidelines range exceeded the twenty-year maximum term of imprisonment under 21 U.S.C. § 841(b)(1)(C), the probation officer applied U.S.S.G. § 5G1.1(a) so that the recommended Guidelines range was the lower, statutorily-authorized, maximum sentence of 240 months imprisonment.

In discussing the sentencing factors under 18 U.S.C. § 3553(a) and her recommendation for a lengthy prison term, the probation officer noted the nature, circumstances, and seriousness of the offense included the fact Ms. Hee obtained and sold prescription drugs; recruited and coached young people in the conspiracy; fostered their dependency and suppled narcotics to them in order to worsen their addictions as a means to keep them working for her; and led the conspiracy which resulted in at least two individuals' deaths. The probation officer also discussed Ms. Hee's personal history and characteristics, including her significant, longstanding history of abusing prescription pain medications; her medical condition causing pain in both feet which exacerbated her prescription narcotics addiction; the fact she battled depression and anxiety for several years; and her employment record, showing she operated a vehicle subleasing company and a salon during the period in which she ran the drug trafficking organization.

As stipulated in the plea agreement, the government filed a motion for downward departure pursuant to U.S.S.G. § 5K1.1, requesting the district court depart downward from the statutory maximum sentence of 240 months and impose a sentence in the range of 144 to 168 months. Other than additions or clarifications not affecting the disposition of this appeal, Ms. Hee did not file any objections to the presentence report, including the findings of fact and calculation of her sentence, but requested a sentence of time served followed by a term of supervised release. Ms. Hee also filed a formal motion for a downward variant sentence for time served, based, in part, on: (1) her personal history and characteristics involving her longstanding, significant history of abusing prescription pain medications which she explained led to her arrest; (2) her current sobriety and intent to maintain her sobriety through continued treatment; (3) the fact other members of her organization were not charged or received suspended sentences rather than incarceration; and (4) the evaluation of her psychiatrist, which concluded her "criminal activity was the direct result of her opiate dependence"; "her development of opiate dependence [was] primarily explained by biological (genetic) and social (historical) factors"; and that through an appropriate treatment plan "her opiate dependence" would "remain in remission with minimal likelihood of further criminal activity" and she possessed "a high likelihood of a future life that gives back to others."

At Ms. Hee's sentencing hearing, the government called various witnesses whose testimony fully corroborated the stipulated facts in the plea agreement. One witness, who participated in Ms. Hee's prescription drug trafficking organization, testified Ms. Hee used her to obtain and sell prescription drugs; kept her addicted to prescription drugs, including providing her fentanyl patches while she was in a rehabilitation facility; and made her feel threatened. Another government witness, a doctor, testified on how different opiates (like Percocet, oxycodone, OxyContin, and fentanyl) and benzodiazepine drugs (like alprazolam or Xanax) are addictive and can cause death; described fentanyl as a "very, very powerful narcotic" considered to be a hundred times or so more powerful than some of the standard narcotics; and explained that a mixture of an opiate and benzodiazepine is even more addictive than with singular use. He also explained Ms. Phillips's autopsy revealed she had Ecstasy, cocaine, fentanyl and oxycodone in her system in amounts sufficient to stop her from breathing; and Mr. Bennett's autopsy revealed he had fentanyl, Ecstasy, and MDA (another amphetamine drug) in his body and that this "polypharmacy overdose" was the cause of his death. The doctor also testified, as disclosed by Colorado Physician Drug Monitoring Program records, on the type and unusually large quantity of drugs Mr. Bennett was prescribed prior to his death and the type and unusually large quantity of drugs Ms. Phillips, Ms. Hee, and others were prescribed prior to Ms. Phillips's death.

A federal drug investigation agent also testified for the government and provided testimony on the statements proffered by members of Ms. Hee's drug trafficking organization, including that they were referred by Ms. Hee to Dr. Hoffman for the purpose of obtaining prescription drugs; Ms. Hee coached them on what to do or say in order to obtain such drugs; Ms. Hee paid for the doctor visits and the prescriptions; and, after they obtained the prescriptions, Ms. Hee either split the drugs with them or payment was made based on their arrangement with her. According to the agent, members of the organization also stated: (1) Ms. Hee would control the drugs over addicted members of her organization; (2) their addictions escalated once they became involved with her and she used their hard-core addictions to obtain more pills and cash; and (3) none had been addicted to the stronger drug, fentanyl, prior to their involvement with Ms. Hee, but some began using it after she introduced it to them. He also testified with regard to Ms. Hee's ledger, which contained information on the amount and type of drugs involved in her drug trafficking organization and money owed her, and stated he learned Ms. Hee made approximately $40,000 a month selling drugs and rented a luxury home in Evergreen, Colorado. The agent also provided information obtained from a member of the organization who related Ms. Hee's statement to her that Ms. Hee put fentanyl on Mr. Bennett's finger and he put his finger in his mouth prior to his death. Finally, Ms. Phillips's husband testified that her addiction to prescription drugs increased and her behavior changed after

she became involved with Ms. Hee, whom she met at a drug addiction/Narcotics Anonymous program and who agreed to be her sponsor.

Following this evidence, Ms. Hee presented the testimony of her psychiatrist who testified he performed the evaluation on Ms. Hee which her counsel submitted into the record, Ms. Hee had previously made efforts to deal with her opiate dependence, and she had no personality traits showing she preyed on others or had sociopathic tendencies. In addition, Ms. Hee's daughter testified, explaining Ms. Hee has been a good mother, even though Ms. Hee had been addicted the entire eighteen years of her life.

Following the submission of evidence and verification Ms. Hee did not object to the calculation of her sentence, the district court determined, pursuant to U.S.S.G. § 5G1.1(a), that her Guidelines sentence consisted of the 240-month statutory maximum sentence, which was below the recommended Guidelines range of 262 to 327 months imprisonment. It then granted the government's motion for downward departure, based on Ms. Hee's substantial assistance, for the purpose of departing from the 240-month Guidelines sentence and applying a Guidelines range of 144 to 168 months imprisonment, to which neither party objected. With regard to a variant sentence, it heard arguments from counsel, including Ms. Hee's counsel, who requested a sentence of time served and

supervised release. In support of such a sentence, Ms. Hee's counsel pointed out other members of the drug organization received lesser sentences of only supervised release and provided mitigating circumstances such as Ms. Hee's own drug addiction, need for treatment, and commitment to maintaining sobriety.

The district court also listened to Ms. Hee's allocution, in which she stated her letter to the court contained the statements she wished to make and that she was sorry she was "in this position" and "put other people possibly in this position" and felt terrible for her daughter. Following arguments and Ms. Hee's statement, the district court imposed an above-Guidelines sentence of 180 months imprisonment. In explaining why other members of the drug organization received lesser sentences, the district court noted only five other members of the drug organization were charged and convicted, four of which received punishment of supervised release because they were first-time offenders with Guidelines ranges of zero to seven months, and the other, who had a higher Guidelines range of forty-six months due to a prior criminal record, received a longer period of supervised release. It then explained they were merely followers and younger addicts who lacked experience and judgment, while Ms. Hee, an apparently more sophisticated individual, operated and profited from her drug business; corrupted and influenced naive, ignorant, and susceptible individuals; destroyed their and their families' lives; and did "absolutely nothing to slow down [her] continuing

criminal enterprise" after the deaths of two young people in her organization. It also explained Ms. Hee acted as the hub of the organizational wheel and that her manipulation of those in her organization was inexcusably criminal and merited severe punishment.

In further explaining the reason for a variant sentence, the district court pointed out that while Ms. Hee talked about herself throughout her letter to the court, she showed total indifference to others, including the two people who died, and in reference to them merely stated, "[w]e didn't intend it." While it acknowledged Ms. Hee's psychiatrist's suggestion she continue treatment rather than be incarcerated and that pathological indifference to others is a characteristic of addicts, the district court again pointed to Ms. Hee's lack of remorse for the death of the two individuals in her organization; the fact she went ahead with her conspiracy to sell drugs after their deaths; and the fact that, after having treatment during incarceration, her subsequent letter showing indifference to others did not comport with her psychiatrist's suggestion that treatment would correct such indifference. It also pointed out that while Ms. Hee may be an addict, she "knew how to get things done," operated three businesses successfully, ran her drug ring "for profit" making lots of money, and moved from a tiny bungalow to a mansion. After explaining it considered the arguments of counsel, Ms. Hee's statements during her allocution and letter to the court, and the "enormity" of the evidence

showing the number of people involved, the quantity of drugs, and the many lives

ruined by her organization, the district court stated:

> I feel–it's almost like trying to clean up the environment after a hurricane. It's just so much devastation, loss that's here, and is it all your fault? No. But you had such a significant role in it, and you have caused such great damage to people that I am going to impose a sentence quite different from that your attorneys have asked for and quite different from what I imposed on these other people.
>
> Based on the findings that I have made, I'm not following the sentencing guidelines. ... But pursuant to [18 U.S.C. § 3553], I find that punishment is necessary, that deterrence can only be achieved in this case by a very severe sentence, [and] that while I do believe after reviewing the medical records that you do need to continue in psychological care and treatment ... that's affordable ... in an institution of the bureau of prisons, ... society ... needs to be safe and needs to be rest assured that when somebody takes control of a drug ring and puts people in harm's way, that they are going to be punished.

It then imposed an above-Guidelines-range sentence of 180 months imprisonment

and supervised release of three years. It also recommended the Bureau of Prisons

place Ms. Hee in an institution with access to mental and physical treatment for

her chronic pain and addiction and further conditioned her supervised release on

her participation in and successful completion of drug and mental health

programs.

## II. Discussion

Ms. Hee now appeals her 180-month sentence on grounds it is procedurally

and substantively unreasonable based on the totality of the circumstances. We

review a sentence for reasonableness, giving deference to the district court under an abuse of discretion standard. *See United States v. Smart*, 518 F.3d 800, 802-03, 805 (10th Cir. 2008). Thus, we review "'all sentences–whether inside, just outside, or significantly outside the Guidelines range–under a deferential abuse-of-discretion standard'" in which we afford substantial deference to the district courts. *Id.* at 806 (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)). While "[f]actual findings must be supported by a preponderance of the evidence," we have held "[a] district court may accept any undisputed portion of the presentence report as a finding of fact." *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) (internal quotation marks omitted). As the trier of fact in a sentencing proceeding, the district court also has the exclusive function of appraising the credibility of the witnesses, determining the weight to give their testimony, and resolving any conflicts in the evidence. *See United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984).

"Our appellate review for reasonableness includes both a procedural component ... as well as a substantive component, which relates to the length of the resulting sentence." *Smart,* 518 F.3d at 803. "Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately

explain the sentence." *United States v. Huckins*, 529 F.3d 1312, 1317 (10th Cir.

2008). In determining whether the district court properly calculated a sentence,

we review its legal conclusions de novo and its factual findings for clear error.

*See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (*per curiam*).

However, when a defendant fails to raise an objection to the district court's

calculation or explanation of a sentence, we review the district court's

determination only for plain error. *See United States v. Ruiz-Terrazas*, 477 F.3d

1196, 1199 (10th Cir. 2007).[2]

In turn, substantive reasonableness addresses whether the sentence length is

reasonable given all the circumstances of the case in light of the § 3553(a)

factors. *See Huckins,* 529 F.3d at 1317. Generally, an argument that the district

court gave undue weight to one factor over another challenges the substantive

reasonableness of a sentence. *See Smart,* 518 F.3d at 808. In reviewing the

substantive reasonableness of a sentence, "[w]e may not examine the weight a

district court assigns to the various § 3553(a) factors, and its ultimate assessment

of the balance between them," but must "give due deference to the district court's

decision that the § 3553(a) factors, on a whole, justify the extent of the variance."

---

[2] "Plain error occurs when there is (i) error, (ii) that is plain, which (iii) affects the defendant's substantial rights, and which (iv) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Ruiz-Terrazas*, 477 F.3d at 1199.

*Id.* (internal quotation marks omitted).  "Although the degree of variance from the Guidelines range remains a *consideration* on appeal, it may not define our threshold standard of review."  *Id.* at 807 (internal citation omitted).  In addition, we do not require the § 3553(a) factors "reach some specific level of evidentiary weight," and "although a district court must provide a reasoning sufficient to support the chosen variance, it need not necessarily provide 'extraordinary' facts to justify *any* statutorily permissible sentence variance ...."  *Id.*

In this case, Ms. Hee argues her sentence is procedurally unreasonable because the district court "failed to give meaningful consideration to the § 3553 [sentencing] factors," considering only the nature and circumstances of the offense and need for punishment, rather than considering the other sentencing alternative provided and her individual characteristics, including her own addiction and positive attributes like her efforts to be present in her daughters' lives, significant progress in participating in rehabilitation programs while incarcerated; and unlikelihood to re-offend if given the proper treatment.  Ms. Hee suggests the district court concentrated too much on its own perception of her indifference to others, which she suggests it derived merely from her letter to the court and the singular statement of her psychiatrist that she is "[a]t times too self-focused and does not consistently pay enough attention to the needs and feelings of other people."  She argues the district court ignored not only her positive

attributes, but the many mitigating statements she made to her psychiatrist, his assessment of her personality traits, and his belief that rather than lengthy incarceration, she should receive treatment through extended residential and transitional living programs.

To the extent Ms. Hee is suggesting the district court failed to consider the requisite § 3553(a) factors, we review such a procedural unreasonableness argument for plain error based on her failure to raise an objection to the district court's calculation or explanation of her sentence. However, as the government contends, the crux of her argument centers on her claim the district court failed to give meaningful consideration to the § 3553(a) factors by giving undue weight to one factor over another. This is a challenge to the substantive reasonableness of a sentence. *See Smart,* 518 F.3d at 808. As to her explicit substantive reasonableness argument, Ms. Hee claims her sentence is "greater than necessary to satisfy the purposes of sentencing." In support of this argument, she points out: (1) "there is no indication" she gave Mr. Bennett or Ms. Phillips the drugs leading to their deaths; (2) the individuals involved in the drug ring were already drug addicts prior to meeting Ms. Hee; (3) the drug ring was the direct result of her own severe addiction to prescription drugs; (4) others significantly involved in the drug ring received far lesser sentences, including Ms. Wilfley, the next most culpable individual, who received only a probationary sentence; and (5) her

counsel fashioned an alternative sentence of an extended period of supervised release and drug treatment that would have provided adequate deterrence, protected the public, and provided her with needed treatment.

In conducting our review of the voluminous record in this case, including the lengthy transcript of the sentencing proceeding, numerous exhibits, and the parties' multiple pleadings and arguments, we reject Ms. Hee's claim the district court failed to consider all of her personal history and characteristics and, instead, impermissibly concentrated only on her indifference to others. In varying upward, it explicitly stated it had considered the arguments of counsel, Ms. Hee's allocution and letter to the court, and the "enormity" of the evidence involved, which included both Ms. Hee's and the government's evidence in favor of and against a sentence of incarceration. Moreover, nothing in the record suggests the district court ignored the statements she made to her psychiatrist, his assessment of her personality traits, or his belief she would benefit from treatment through extended residential and transitional living programs. Thus, it is clear it considered not only the serious nature of Ms. Hee's offense, her negative (if not deadly) influence over those involved in her organization, and her indifference to them, but also the characteristics on which her counsel relied in seeking a lesser sentence, such as her own addiction to prescription drugs, efforts to be present in her daughters' lives, attempts at rehabilitation and progress in treatment programs

while incarcerated, and argument she would be unlikely to re-offend if given the proper treatment. However, after such consideration, it rejected her contention mere supervised release and drug treatment would sufficiently punish her for her crime, act as a deterrent, or protect the public. Instead, it expressly determined, based on the circumstances presented, that punishment was necessary, deterrence could only be achieved by a very severe sentence, and she could receive any needed psychological and drug treatment while incarcerated and on supervised release. Thus, contrary to Ms. Hee's contention, it is clear the district court considered the requisite sentencing factors, as required for a procedurally reasonable sentence, and did not commit plain error.

With regard to the substantive reasonableness of Ms. Hee's sentence, the district court considered the sentencing factors and the evidence in support thereof, and we may not examine the weight it assigned to the various § 3553(a) factors or its ultimate assessment of the balance between them but must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Smart*, 518 F.3d at 808. Moreover, while a district court is required to provide reasoning sufficient to support the chosen variance, it is not required to provide extraordinary facts to justify the statutorily permissible sentencing variance or give mathematical precision to the § 3553(a) factors for the purpose of reaching some specific level of evidentiary weight. *See*

*id.* at 807.

Here, after making its credibility determinations and resolving any conflicts in the evidence, the district court provided its reasoning for the variant sentence, including its discussion of the very serious nature of Ms. Hee's offense and unfavorable history and characteristics, including her recruitment of young addicts she ensured remained addicted and used to further her drug operation for her own benefit; her blatant disregard for the lives of those to whom she sold drugs; and her apparent indifference to those who died as a consequence of her actions.[3]  It also determined Ms. Hee remained unremorseful or indifferent to

---

[3]  While Ms. Hee contends on appeal that there is no indication she gave Mr. Bennett or Ms. Phillips the drugs leading to their deaths, evidence presented at trial clearly established those drugs came directly from Ms. Hee's drug organization.  Moreover, not only did Ms. Hee stipulate in her plea agreement that the offense to which she pled guilty resulted in Ms. Phillips's and Mr. Bennett's deaths and she organized and led the conspiracy which resulted in those two deaths, but testimony provided at sentencing also established she admitted to a member of her organization that she put fentanyl on Mr. Bennett's finger and he put his finger in his mouth prior to his death.

Similarly, while Ms. Hee correctly claims the other individuals involved in her drug ring were addicts prior to meeting her, testimony at trial established she: (1) recruited them because of their addictions and her ability to manipulate them; (2) aided in the continuation of their addictions for the benefit of furthering her prescription drug conspiracy; and (3) introduced many of them to, and provided them with, the more powerful or hardcore prescription drug, fentanyl, which none of them had used before and which is much more addictive, and thereby more devastating, than the prescription drugs they previously used.  In addition, evidence established Ms. Hee incredibly recruited Ms. Phillips into participating in her drug ring after meeting her at a drug counseling meeting, where Ms.

(continued...)

-21-

those she injured.[4]  As a result, it determined punishment was necessary, deterrence could only be achieved by a very severe sentence, and she could receive psychological and drug treatment while incarcerated and later during supervised release.

As to any discrepancy between the sentence Ms. Hee received and the sentences of the five others involved in her drug organization who were also convicted, we have held "§ 3553(a)(6) does not require the sentencing court to compare the sentences of codefendants; rather, it looks to uniformity on a national scale." *United States v. Ivory*, 532 F.3d 1095, 1107 (10th Cir. 2008).  We also do not require a district court to distinguish the defendant's characteristics and history from those of the ordinary offender contemplated by the Guidelines, nor do we require facts demonstrating the existence of extraordinary defendant characteristics and history.  *See Smart*, 518 F.3d at 806-08.  "While similar offenders engaged in similar conduct should be sentenced equivalently, disparate

---

[3](...continued)
Phillips was attempting to overcome her addiction and Ms. Hee incredulously offered to act as her sponsor.

[4]  We have long recognized the defendant has the burden of proving by a preponderance of the evidence she accepted responsibility, *see United States v. Spedalieri*, 910 F.2d 707, 712 (10th Cir. 1990), and we have generally recognized that the district court is in a better position than us to weigh a defendant's sincerity of remorse and contrition.  *See United States v. Ochoa-Fabian*, 935 F.2d 1139, 1143 (10th Cir. 1991).

sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006).

In this case, the district court elected to compare Ms. Hee and her co-defendants for the purpose of addressing her argument for a lesser sentence. In so doing, it carefully articulated the reasons for the disparity between Ms. Hee's and the other defendants' sentences by explaining four of them had Guidelines ranges of only zero to seven months, while another had a Guidelines range of approximately forty-six months due to a prior criminal record. These are substantially less than: (1) Ms. Hee's initially-calculated Guidelines range of 262 to 327 months imprisonment; (2) the lesser statutory maximum sentence of 240 months for her offense; or (3) the downward departure range of 144 to 168 months granted by the district court. Not only does this offer an explanation of why their sentences differed from Ms. Hee's, but the district court also noted they received variant sentences of supervised release because they were merely followers who were much younger than Ms. Hee; lacked experience and judgment; were corrupted, manipulated, and influenced by her; and otherwise had their lives destroyed through their association with her.

In turn, the district court explained Ms. Hee received an above-Guidelines variant sentence because she acted as the hub of the organization; operated and

profited from her drug business; corrupted those who were younger, naive, and susceptible in order to further her business; destroyed not only their but their families' lives; did nothing to curtail her criminal enterprise after the deaths of two young people involved in her organization; and continued to show indifference to others through her activities. While Ms. Hee may have had an addiction to prescription drugs, it is evident from the record, and as indicated by the district court, that she managed her addiction in a way which allowed her to successfully operate a complex prescription drug operation, earn up to $40,000 a month, and live in luxury, while those she supervised had their addictions escalate after meeting her, were functionally consumed by their addictions, and had their lives damaged or destroyed through their association with her.

In sum, without further reiterating the district court's reasons for a variant sentence or the evidence supporting it, its rationale is sufficiently compelling to support the degree of the variance given, and it has satisfied us it considered the parties' arguments and the § 3553(a) sentencing factors and had a reasoned basis for the variant sentence given. Ms. Hee has not otherwise demonstrated her statutorily-permissible, variant sentence is either procedurally or substantively unreasonable for the purpose of warranting reversal on appeal.

III.  Conclusion

Accordingly, we **AFFIRM** Ms. Hee's 180-month term of imprisonment.


**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge