FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**December 12, 2023**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GREGORY YARNELL WILLIAMS,

    Defendant - Appellant.

No. 23-6034
(D.C. No. 5:20-CR-00149-PRW-1)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.[**]

Gregory Yarnell Williams pleaded guilty to one count of possessing

methamphetamine with intent to distribute in violation of 21 U.S.C.

§ 841(a)(1), (b)(1)(A), and one count of being a felon in possession of a firearm

in violation of 18 U.S.C. § 922(g)(1). The district court initially imposed

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

concurrent 284-month sentences on each count. Mr. Williams appealed, and this court vacated the judgment and remanded for resentencing. *See United States* v. *Williams (Williams I)*, 48 F.4th 1125, 1128 (10th Cir. 2022). On remand, the district court imposed a 272-month sentence for the drug count and a 120-month sentence for the firearm count, again running concurrently. On appeal, Mr. Williams argues his sentence is substantively unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

The background facts are detailed in *Williams I*, 48 F.4th at 1128–32. A summary suffices for this appeal.

## A

In May 2020, investigators observed Mr. Williams pick up a package flagged as suspicious by the United States Postal Inspection Service. *Id.* at 1128. A month later, investigators intercepted a different package addressed to the same residence and discovered it contained suspected methamphetamine in vacuum-sealed bundles. *Id.* at 1129. The investigators repackaged the shipment for delivery, and law enforcement officers subsequently observed Mr. Williams bring the package inside the residence and leave in his SUV shortly thereafter. *Id.* Officers stopped the SUV, arrested Mr. Williams, and obtained a search warrant for the residence, where they found the resealed package, two scales, a heat sealer,

a surveillance system, and a loaded revolver. *Id.* Subsequent testing showed the intercepted package contained 1,222 grams of actual methamphetamine. *Id.*

Mr. Williams was convicted after pleading guilty to one count of possessing methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Williams's advisory Sentencing Guidelines range was 360 months to life imprisonment. The district court granted a downward variance from the Guidelines range and imposed concurrent 284-month sentences on each count.

This court vacated Mr. Williams's sentence and remanded to the district court to (1) make further drug-quantity findings regarding the § 841 violation and (2) resentence Mr. Williams on the § 922 violation without the Armed Career Criminal Act enhancement.

**B**

On remand, the United States Probation Office filed a supplement to the presentence investigation report (PSR). Probation calculated Mr. Williams's total offense level as 38:

- Base Offense Level – § 841(a) violation[1]                        **36**
- Specific Offense Characteristics – § 2D1.1(b)(1)                  **+2**
- Specific Offense Characteristics – § 2D1.1(b)(12)                 **+2**
- Acceptance of Responsibility – § 3E1.1(a)[2]                      **-2**
- Total Offense Level                                               **38**

R.II at 48–50. At criminal history category VI, Mr. Williams's Guidelines range was 360 months to life.

Mr. Williams filed a sentencing memorandum requesting a downward variance from the Guidelines range under 18 U.S.C. § 3553(a). As relevant here, Mr. Williams urged the court to consider his good conduct since the original sentencing, "including work in a UNICOR facility, educational programming, and the lack of institutional misconduct sanctions." R.I. at 211. He also pointed to data from the Judiciary Sentencing Information

---

[1] The PSR supplement grouped the § 841(a) and § 922 counts under U.S.S.G. § 3D1.2(c).

[2] At the original sentencing, the government did not move for the additional one-level decrease pursuant to § 3E1.1(b). As the government explains in its Response Brief, the government declined to move for the additional one-level point decrease "[b]ased on a letter submitted to the district court in which Mr. Williams downplayed his involvement in the distribution of the drugs and claimed the firearm did not belong to him, that the house was not used for drug distribution, and that 'this was a one time thing for methamphetamine.'" Resp. Br. at 6.

(JSIN) database showing the mean length of imprisonment for similar methamphetamine offenders[3] is 240 months.

At the resentencing hearing, the district court initially calculated Mr. Williams's Guidelines range based on an offense level of 36 and a criminal history category of VI, yielding a Guidelines range of 324 to 405 months of imprisonment on the drug count and 120 months of incarceration on the firearm count. After hearing arguments from Mr. Williams and the government, the district court granted in part and denied in part the downward variance.

The district court began by explaining why it originally imposed a 284-month sentence—the subject of the direct appeal in *Williams I*. That sentence "wasn't driven by the guideline range," the district court explained, "because it was . . . way below the guideline range." R.III at 37. Rather,

> [the court] was largely concerned at the time about
> . . . the criminal history category of VI and that sort
> of continuous, but escalating conduct related to drug
> trafficking, the fact that Mr. Williams was kind of
> past the age that you would normally see aging out
> [of this type of criminal activity], and yet nothing
> was changing and the prior interventions just hadn't

---

[3] Mr. Williams maintained this data was specific to "individuals sentenced under the primary Guideline of § 2D1.1 for methamphetamine with a criminal history category of VI and who did not benefit from a substantial assistance motion under § 5K1.1." R.I at 214. These metrics are not relevant to this appeal.

> seemed to do anything. So the sentence was really driven by that and [the court's] concern about the need to protect the public.

R.III at 29. Still, the district court imposed a below-Guidelines sentence of 284 months "because just looking at [Mr. Williams's] age, . . . . he's going to be quite an old man by the time he gets out." R.III at 29. "[S]urely at that point in his life," the court reasoned, "he will be aged out of this conduct." R.III at 29. But the court "wanted to impose a sentence that wasn't a life sentence . . . . [t]hat wasn't one where [Mr. Williams would think] that there was no prospect on the other end" such that he would "give up" on bettering himself while incarcerated. R.III at 37–38. The 284-month sentence, then, was selected to be "long enough to protect the public from future crimes by [Mr. Williams]," but "was not so lengthy as to make [Mr. Williams] give up and think that [he is] never going to get out." R.III at 38.

According to the district court, "[v]irtually nothing has changed" since the original sentencing proceeding, and "[r]eally the only thing that's cutting in [Mr. Williams's favor on resentencing] is . . . that [his] conduct since being incarcerated has been good and [he has] taken advantage of programming in an attempt to better [himself]." R.III at 38. The court reasoned that "[not] a ton of credit" should be given to Mr. Williams for good conduct while incarcerated, because "you should behave while

6

incarcerated," but the court "appreciate[d]" that Mr. Williams was taking advantage of BOP programming. R.III at 38.

The district court sentenced Mr. Williams to prison for 272 months on the drug count and 120 months on the firearm count, to run concurrently, yielding a sentence one year shorter than the original sentence. The court acknowledged that in coming to its resentencing decision, it "consider[ed] the need to avoid unwarranted sentence disparities among similarly-situated defendants." R.III at 27.

Mr. Williams timely appealed.

## II

"[A]ppellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States* v. *Smart*, 518 F.3d 800, 803 (10th Cir. 2008). This appeal presents a single question following the remand in *Williams I*: whether the 272-month sentence imposed by the district court on resentencing is substantively unreasonable.

"[A] substantive challenge concerns the reasonableness of the sentence's length and focuses on the district court's consideration of the § 3553(a) factors and the sufficiency of the justifications used to support the sentence." *United States* v. *Sanchez-Leon*, 764 F.3d 1248, 1267 (10th Cir.

2014) (quoting *United States* v. *Lente,* 647 F.3d 1021, 1030 (10th Cir. 2011)). "When reviewing a sentence for substantive reasonableness, we focus on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'"[4] *United States* v. *Cookson,* 922 F.3d 1079, 1091 (10th Cir. 2019) (quoting *United States* v. *Friedman,* 554 F.3d 1301, 1307 (10th Cir. 2009)). "A sentencing decision is substantively unreasonable if it 'exceed[s] the bounds of permissible choice, given the facts and the applicable law.'" *United States* v. *Chavez,* 723 F.3d 1226, 1233 (10th Cir. 2013) (quoting *United States* v. *McComb,* 519 F.3d 1049, 1053 (10th Cir. 2007)).

"We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."[5] *United States* v. *Richards,* 958 F.3d 961, 968 (10th Cir. 2020); *see also Smart,* 518 F.3d at 805 ("[I]t has

---

[4] Under 18 U.S.C. § 3553(a), district courts are required to consider seven factors in sentencing: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the kinds of sentences available; (4) the Sentencing Commission Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution." *United States* v. *Cookson,* 922 F.3d 1079, 1092 (10th Cir. 2019) (citation and quotation marks omitted).

[5] This abuse of discretion standard applies regardless of whether the sentence on review was imposed on sentencing or resentencing. *See United States* v. *Maldonado-Passage,* 56 F.4th 830, 841–42 (10th Cir. 2022).

been well settled that we review a district court's sentencing decisions solely for abuse of discretion."). "We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo." *Smart*, 518 F.3d at 808. "Instead, we must . . . . defer not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *Id.* "[I]n many cases there will be a range of possible outcomes the facts and law at issue can fairly support . . . [and] we will defer to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *United States* v. *Durham*, 902 F.3d 1180, 1236 (10th Cir. 2018) (quoting *United States* v. *McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)).

As Mr. Williams acknowledges, we apply a "rebuttable presumption of reasonableness to a below-guideline sentence challenged by the defendant as unreasonably harsh." *Richards*, 958 F.3d at 968–69 (quoting *United States* v. *Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011)). A "[d]efendant may rebut this presumption by demonstrating the sentence is unreasonable when viewed against the factors described in § 3553(a)." *Id.* at 969.

On appeal, Mr. Williams contends the district court gave insufficient weight at his resentencing to three statutory sentencing factors. According

9

to Mr. Williams, had the district court properly weighed the § 3553(a) factors, it would have found the following factors favored a lower sentence: (1) his history and characteristics, § 3553(a)(1); (2) his risk of recidivism, § 3553(a)(2); and (3) the need to avoid unwarranted sentence disparities, § 3553(a)(6). As we explain—and particularly given the deferential standard of review—we cannot conclude the district court's decision to vary 52 months below the Guidelines range was an abuse of discretion.

## A

Mr. Williams first argues the district court "seemingly gave no material weight to the terrible childhood that Mr. Williams endured," citing Mr. Williams's childhood poverty and the "tough, gang-infested neighborhoods" where Mr. Williams grew up. Opening Br. at 10.

As an initial matter, we acknowledge the record supports the claim Mr. Williams endured a challenging childhood, and we have no reason to conclude the district court was unaware of this aspect of Mr. Williams's history. The district court informed the parties that it had read "everything" in advance of resentencing, which necessarily included the presentence investigation reports and sentencing memoranda describing Mr. Williams's childhood adversities. But the district court further explained that a particular aspect of Mr. Williams's "history and characteristics"—namely, his "significant criminal history"—"was the real driving factor in the

10

[court's] original sentence," and on resentencing, "nothing has changed in that regard." R.III at 27, 30. Under these circumstances, we discern no error. As we have explained, "[w]e may not examine the weight a district court assigns to various § 3553(a) factors . . . de novo" but instead must defer to a district court's determination of the weight to be afforded to those factors. *Smart*, 518 F.3d at 808. While the district court had the discretion to grant Mr. Williams a downward variance based on his childhood, it did not abuse its discretion by declining to do so.

## B

Mr. Williams next argues the district court overestimated Mr. Williams's risk of recidivism and "fail[ed] to appreciate the likelihood that a defendant like Mr. Williams would desist [from criminal activity] in his 50s or 60s." Opening Br. at 11. He contends "the district court reasoned that, if Mr. Williams has not aged out of crime by now, there is no reason to believe he will desist his criminal behavior until he is in his mid-70s, . . . . [b]ut this is not how recidivism works." Opening Br. at 11. In support of this contention, Mr. Williams points to empirical data purportedly indicating "a significant proportion of defendants who continue to offend into their 40s will stop such criminal behavior in their 50s or 60s." Opening Br. at 11.

The empirical data marshalled by Mr. Williams on appeal was not presented to the district court. *See* Resp. Br. at 18–19. We cannot say the

district court abused its discretion by failing to consider evidence not brought before it. Nor may we consider such evidence for the first time ourselves. *See United States* v. *Suggs*, 998 F.3d 1125, 1141 (10th Cir. 2021) ("[W]e are 'a court of review, not of first view.'" (quoting *Cutter* v. *Wilkinson*, 544 U.S. 709, 718 n.7 (2005)); *see generally United States* v. *Wilson*, 839 Fed. App'x. 269, 271 n.7 (10th Cir. 2021) ("Because Mr. Wilson's letter was not before the district court at the time that the court imposed Mr. Wilson's sentence, its contents cannot properly factor into our decisional calculus.").

To the extent Mr. Williams argues generally that, given his age, the sentence imposed was greater than necessary to protect the public from further crimes, we see no reversible error. The district court observed "Mr. Williams was . . . past the age that you would normally see aging out [of criminal activity], and yet nothing was changing and the prior interventions just hadn't seemed to do anything." R.III at 29. The district court thoughtfully considered how best to weigh Mr. Williams's risk of recidivism alongside § 3553(a)'s mandate to "impose a sentence sufficient, but not greater than necessary." *See* R.III at 26 (describing the court's "overarching concern" as "impos[ing] a sentence that's sufficient, but not greater than necessary to comply with the purposes of sentencing."); *see also* R.III at 33 (explaining the court "was thinking very much about how long does [Mr. Williams] need to stay in" in light of his age and criminal history). The

record shows the court was aware of its obligation to impose a parsimonious sentence. *See United States* v. *Martinez-Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) ("When crafting a sentence, the district court must be guided by the 'parsimony principle'-that the sentence be 'sufficient, but not greater than necessary, to comply with the purposes' of criminal punishment, as expressed in § 3553(a)(2)." (quoting 18 U.S.C. § 3553(a))). Conducting the balancing inquiry, the court reasoned "a very lengthy sentence [is] necessary in light of [Mr. Williams's] criminal history and [his] refusal to give up criminal conduct, despite being given many, many chances." R.III at 37.  On this record, we conclude the district court's decision was one of the "rationally available choices" before it. *See Durham*, 902 F.3d at 1236 (quoting *McComb*, 519 F.3d at 1053).

## C

As for the need to avoid unwarranted sentencing disparities, Mr. Williams contends the district court gave insufficient weight to the JSIN data submitted at sentencing. Mr. Williams asserts, based on those statistics, the average sentence for defendants "similarly situated to Mr. Williams" is 240 months—many-months lower than the 272-month sentence imposed by the district court on resentencing. Opening Br. at 12.

"It is unquestionably true that under § 3553(a)(6), a sentencing court must consider 'the need to avoid unwarranted sentence disparities *among*

13

*defendants with similar records who have been found guilty of similar conduct.'" United States* v. *Garcia*, 946 F.3d 1191, 1214–15 (10th Cir. 2020) (quoting 18 U.S.C. § 3553(a)(6)). Here, the district court acknowledged "the need to avoid unwarranted sentence disparities among similarly-situated defendants" in explaining its consideration of the § 3553(a) factors, though it did not reference the JSIN data. R.III at 27. Mr. Williams accurately describes the JSIN data; at the time of Mr. Williams's resentencing, it showed defendants with a total offense level of 36 and a criminal history category of VI were sentenced on average to 240 months for trafficking methamphetamine. But recall, the court observed it was "concerned . . . about . . . this sort of continuous, but escalating conduct related to drug trafficking . . . past the age that you would normally see aging out [of this conduct]." R.III at 29.

The national JSIN statistics cited by Mr. Williams, without more, did not account for—and could not alone resolve—the district court's expressed apprehensions in this case. *See Garcia*, 946 F.3d at 1215 ("[Appellant's] bare national statistics do not shed light on the extent to which the sentences that the statistics pertain to involve defendants that are similarly situated to [Appellant] . . . . notably, whether those defendants have been involved a similar longstanding pattern of . . . serious lawbreaking, which not infrequently involved unlawful possession of inherently dangerous

14

firearms."). Particularly considering the § 3553(a) factors "in light of the 'totality of the circumstances,'" *United States* v. *Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting *Gall* v. *United States*, 522 U.S. 38, 51 (2007)), and mindful of the district court's concerns expressed on this record, we reject Mr. Williams's argument based on the JSIN data. The sentence imposed here—which is below Guidelines and presumptively reasonable—falls squarely within the range of outcomes permitted by the facts and the law. *See Durham*, 902 F.3d at 1236; *Richards*, 958 F.3d at 968–69.

## III

The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Veronica S. Rossman
Circuit Judge